We'll call the next case United States of America v. Jason Moreno. Mr. Schweitzer, you are called on again to bail out the Western District, I say. Well, we'll see here. Good morning, Your Honors. Brett Schweitzer from the Federal Defender's Office here representing Mr. Moreno this morning. At this time, I would request three minutes for rebuttal. How much, John? Three minutes. Thank you, Your Honor. Let that be an indication. Make sure you speak in that microphone. Very good. Your Honors, I'd like to start, if I may, with the confrontation and hearsay issues before moving to the important sentencing issues in this case. There's no dispute here, as far as I understand, about the error that occurred, the confrontation and the hearsay errors. That's clear. Cassoni and Tome are dispositive and controlling. The issue, as it's joined in the briefs, is over whether the errors were harmless or not. I think you'd better separate them, the confrontation clauses versus the hearsay one, right? I don't think you can group them together because there's an issue on the confrontation clause whether that was waived. Well, there's not a waiver issue. There is an issue of whether it's forfeiture or whether it's paying error. That's right. When you're on that point, where was the confrontation clause objection? The defense lawyer never said confrontation clause. What he did say at 669 is that this isn't his, meaning Heckman's, statement. This is a narrative that Arkelian is reading from the stand. Now, this court, I believe, in the context can read that to say, look, this person isn't on the stand. This is Heckman's statement, he's not on the stand, which I think would be sufficient in the context to preserve a confrontation objection. I would say, though, Your Honors, that I do think under either standard, whether the confrontation was preserved or not, clearly the hearsay objection was preserved. And under either standard, reversal is required. And I say that because of a couple of things. Are you talking about whether it be harmless error or plain error? That's right. But I think in this context, it boils down to essentially the same thing. When you look at the standard, the standard is, it is the government's burden, no matter if there was an objection below. It is the government's burden to show that if it was preserved beyond a reasonable doubt, that the error did not contribute to the verdict. Now you're talking about confrontation clause, right? Because it's constitutional. That's correct. That's correct. But even on the hearsay issue, the standard would be still the government's burden to show that it is not, it's highly probable. Let's go into that. And I understand your confrontation. You say under confrontation clause the objection was enough and it was covered, and we're going to review it under some standard. But let's go to the hearsay objection. Okay. What specific hearsay are you objecting to? The hearsay is the statement of, I mean, it's a double hearsay problem. If you look at Cassoni, Cassoni lays them all out. I understand. You get to Cassoni. But I'm asking questions before you get to Cassoni. Heckman is the absent witness. He's not there. We know he's not there. Heckman is the absent witness saying, yeah, Arkeelian has said this from day one. Arkeelian is reliable. He said this from day one after the impeachment is made. I understand it, but tell me what it is that took place in this redirect that you say is hearsay. So the proper memoranda were offered to the witness. Okay. Look over those. Look at these statements. Look at these statements. And what does he ask them about those statements? He says read into the record. No, what does he ask them before he says read into the record? Well, he says did you make these statements? Did you make these statements? Okay. Is the question of asking him did you make these statements, is that objectionable? No. That's not objectionable. Okay. All right. So what's the objection? The objection here is when he reads into the record the verbatim statements of Heckman. But they're his statements. Wait a minute. The prosecutor asks him to read Heckman's report. There's no question it's Heckman's report, and it's not a signed confession. But he says I want you to read Heckman's report here. He says did you make those statements? And Arkaelian says yes. Right? Correct. And he says read those statements in. Now, aren't those statements his statements? He's saying that I said this back in a year before I entered the guilty plea, whatever that date was. Well, first of all, those are his embedded statements. But reading from the memorandum is reading. So you're saying the mere fact that he read from the memorandum prepared by Heckman. That's why it was introduced. Constitutes hearsay. Absolutely. I just wanted to make sure I understood what your objection is. Absolutely, Your Honor. And the reason this was introduced is because it provided some value over Arkaelian's statement. In a way, the way it was introduced, and I do have a question of opposing counsel. I'm not sure why Heckman, who was around this case a lot, they could have done the same thing by putting Heckman on the stand. But for some reason, Heckman wasn't put on the stand. Isn't it beneficial to your client that Arkaelian said these things rather than Heckman saying them? Well, no, because what Heckman did say, that's what was read into the record. It seems to me your client would be worse off if they put Heckman on the stand and Heckman says on such and such a date, Arkaelian said exactly what he said on direct examination. We'll take the confrontation on that. We would like to have confrontation on that. There's all sorts of cross-examination that could have happened. Let's go to confrontation again. You said a minute ago you think it doesn't really matter whether we're talking about plain error or harmless error or whether we're talking about confrontation clause or hearsay. I'm still hung up on that because it seems to me the standards are very different and it does matter. You mean if it's a confrontation clause, it's beyond a reasonable doubt harmless. If it's hearsay, it's the probability standard, right? They are different, Your Honor. I think the women are both. You have to articulate the difference, I think. But it's the same thing with the plain error, right? The plain error puts us in a different posture. If you didn't preserve that confrontation clause issue, we've got to go through a whole different set of steps to get to the question of whether there was plain. Well, I think what would happen before you would do that or spend too much time doing that, you would look at the preserved hearsay issue. There's no question that that's preserved and you'd look at whether there was harmless error there. So analytically, what you suggest is that we don't even have to get to the confrontation clause issue because that presents maybe some thornier issues about preservation and about plain error, that this is reversible strictly on a hearsay analysis associated with Arcalian reading Heckman's statements into the record. Is that right? Or Heckman's report into the record? Have I understood your position? I think it's reversible under both, yes. And even under plain error. However, I admit... What's a higher no than a different standard is what Judge Jordan is saying. There is, but what the standard is, there are different standards. Beyond a reasonable doubt that it did not contribute to the verdict, that would be confrontation. And then you have the layer of plain error if the court finds it wasn't preserved. Under the hearsay, it's a high probability that it did not contribute to the verdict. Still the government's burden. That's important. This is not a burden shift here. And so what I would like to... Here's why I keep asking you this, Mr. Schweitzer, because you've said more than once, it doesn't matter. And legally, it does matter. And I'm just trying to pin you down and understand is what you're suggesting to us is, hey, don't worry about that confrontation clause stuff, just focus on the hearsay. No, I'm not suggesting that, Your Honor. What I meant by, and it was perhaps an artful, it doesn't matter is that we win under both. You're under both. Your Honor, you're also seeming to say that the burden is the same. The burden isn't the same. The defendant has a burden under plain error to show that the hearsay exception, the hearsay... Again, I'm sorry, Your Honor, I don't think the standards are exactly the same. I think they are slightly different. However, I think we win under both. And here's why. Could you deal with harmless error then under the hearsay rule? Why isn't it harmless error? Sure. Some of the factors you look at are the importance of the testimony. Here, Arkeelian's testimony was unique. Arkeelian testified that Mr. Marino knew it was involved soup to nuts, knew everything was a full partner in this conspiracy. But other witnesses, I understand what you're saying about Arkeelian. He may be at the top of the heap. But the government did produce other witnesses that linked him knowledge-wise to everything that was going on. He wasn't the only witness who testified. Nobody like Arkeelian. Most of the witnesses were buyer witnesses, buyer-seller witnesses in the transactions, and they didn't really have anything to add here. They did have something to add. They were talking about your client's role in this. And if we take the standard we have to when we're reviewing the jury verdict, we draw the inferences all in favor of the government, right? So if a rational jury could hear those people and say, yeah, Mr. Marino was in this up to his eyeballs, leave an Arkeelian out of it altogether, the government wins, right? No. Mr. Marino is up to his eyeballs in the sense that he's doing the appraisals, he's signing appraisals that are not, or he's putting rack signature. There's plenty of evidence that Mr. Marino was violating appraisal norms. The issue here, though, is not just violating appraisal norms, violating appraisal norms in a context that was such repetitiveness that a rational jury could look at it and if Arkeelian had never taken the stand, could still have said, you know what, that's not just bad appraising, that's fraudulent behavior. That's what the government seems to be arguing. That's right, Your Honor, but that's not the test. The test is not would there have been a conviction if this testimony had not come in. The test is can this court say to a high degree of certainty, it's highly probable, that the challenge testimony didn't contribute to the verdict at all, and here's why it did. All of what Your Honors are saying is consistent with the defense that was proffered, however strong or weak that was. Maybe the appraisals were doctored after they left Marino's shop. Maybe he was just trying to trump our business. Maybe he didn't know the extent and didn't have the intent to defraud the banks. Whatever. What was inconsistent with that, the nail in the coffin, is Arkeelian coming in, for instance, and saying, Jason and I joked about getting busted by the FBI. That is incredible testimony. Didn't they have other people who were in the room with them when they were talking about the conspiracy? Am I misremembering, or didn't the government put people on the stand who were present when the two of them were talking about it? Hall and Samuels were two subordinates of Arkeelian's who testified in general terms about, yeah, Jason knew what was going on. There were some buyers and sellers who talked about them both participating, but, again, nothing of the quality of what Arkeelian provided. But that joking with the FBI testimony was not in any of the Heckman statements, was it? Oh, yes, it was, Your Honor. Was it? Yes, that's at page 1631 of the appendix. That's the final proper memo where Heckman describes his memorable scene. I see that, okay. So that is, I would suggest to Your Honors, what you would have to find to uphold the conviction here is that despite the only impeachment of Arkeelian that was possible, which was good impeachment, he ended up getting 20 months in this case, and he's the nerve center, is that he's saving his own neck, he's embellishing on the stand, comes straight back, the prosecutor does, with conceded, hearsay, confrontation-violating testimony from a Secret Service agent. Mr. Schweitzer, I think we understand your points here, and your red light's on, but I'm going to give you an additional five minutes. Thank you, Your Honor. To talk about the cross-examination at allocution. This was, in my experience at least, unprecedented. What we had here was four pages of classic allocution by Mr. Moreno, followed by 18 pages of cross-examination by the prosecutor. I've never seen it either, but there's no case out there that says you can't. Sure there is. There are multiple cases, Your Honor. There are, well, I believe Rule 32 gets us there, but I'll start with the cases. Bindger and Keithy, those are both state cases. Keithy was discussed extensively. There's something binding on us. I'm sorry? Is there anything binding on us that says we can't, that a district judge can't swear the defendant and allow cross-examination? There's not a controlling case. However, I do believe there's text, which I'll get to in a second, but I don't think we need binding authority here for plain error. It's a totality of the circumstances, how clear is the error. What if the district court judge, instead of swearing the defendant and letting the prosecutor ask questions, what if the judge herself had said, now, you just said X, let me ask you about that more closely. Would that have been a violation? No, I think that is different, Your Honor, and here's why. Rule 32, the text, when we go to the text, in addition to the case law, demands a personal judge-defendant communication. Address the defendant personally, give him an opportunity to speak. In Your Honor's hypothetical, that's occurring. Now, are there some limits to that? That's exactly what I'm asking you. Assume that it went on for 18 pages, but it was Judge Fischer doing the questioning. The other Judge Fischer. Yes, Nora Berry Fischer, not this Judge Fischer, instead of the prosecutor. Would that be, in your view, a reversible error? I don't think so, Your Honor. I don't have to take that position here, certainly, but I do think that if there was interaction between the judge and questioning about, you know, What's the practical difference then, Mr. Fischer? What difference does it make whether the words are coming out of the prosecutor's mouth or out of the judge's mouth if the record that's produced is precisely the same, the questions are the same, and the answers are the same? Elocution is not an adversarial process. It's not designed to be. It's not mandated to be in the rule. It is different when we insert the prosecutor into the process, and that removes the judge. That does not make it a personal communication between the judge and the defendant aimed at the important things that we know from Ward are central to elocution. Mitigation, circumstances. Did we make a mistake in Ward in saying that elocution can be sworn? Well, Your Honor, I took the position. I disagree with Ward. However, that doesn't control here. I do think that what was critical in Ward was Ward said, Look, just by swearing a person, that doesn't change the fundamental nature of elocution. Well, I'm not saying it's not critical here. In this case, Mr. Moreno was sworn. I have a question. Let's suppose we agree with you on your hearsay for a confrontation question, and we grant a new trial here. If I'm the government, I'm going to lead off with Mr. Moreno's elocution. Well, that brings to Your Honor's another point with the problem with an adversarial proceeding here, and that is the extent to which it encourages and facilitates problems with respect to self-incrimination. Here what we had, and this also goes to prejudice, here what we had was the prosecutor dragging out of Mr. Moreno, that's his own words, I dragged it out of him, all sorts of conduct that wasn't even involved in the case. So assume we agreed with you that this was unprecedented and inappropriate to take place at a sentencing. How would the decision write? What guidance would we give the district courts about you can't do this, but you can do this? Where's the line? I think what you say here is the prosecutor does not get to cross-examine an allocating defendant. I don't think you say anything about what the judge does. That's what Bittinger said. That's what Keithy says. That's by implication, I would suggest, although I'm not urging this as a holding award, but to the extent that it distinguishes Keithy based on the fact that that case involved cross-examination, which is what it does, I think that's all the further that you need to go. Is there a case down in the future where a judge's questioning of a defendant during an allocation is so badgering or invoking or inviting a waiver of self-incrimination and all this other stuff? Maybe. I tend to doubt it. I think I trust our district judges to have an appropriate concept. But if the understanding is so proper, Your Honor, you might want to ask these questions based on what he said, and then the judge asks them. I imagine you'd have a problem with that. I think that's closer to the line, whether that's essentially a functional equivalent of cross-examination. Again, I don't see that as a particularly likely scenario. Thank you, Your Honors. In this case, I would note that I think the judge did ask a couple questions. In fact, yes. Thank you, Your Honors. I appreciate the extra time. Ms. Datila. Good morning, Your Honors. Jane Datila on behalf of the United States. I'd like to address the preservation part of the Confrontation Clause error briefly and raise some points that are in the record, pointing towards some parts of the record that I didn't mention in my brief, but I think are important. Before you even get there, is it accurate what Mr. Schweitzer said, that the government has conceded it was error? Yes. Okay. Fine. Under Melendez-Diaz, they were testimonial statements prepared in anticipation of litigation. Why didn't they call Heckman? That's a good question. That's why it was conceding error. He should have been called. But part of the record that I wanted to draw your attention to is that Heckman was indeed the case agent. If you look at the both opening statements, it's clear that he's sitting there at counsel's table. So he was there. What difference does that make? Well, that's why it's important that this wasn't preserved. If defense counsel had said, I don't have an opportunity to cross-examine Mr. Heckman, I don't have an opportunity to confront him with this. Isn't that something that even if we assume that the confrontation clause wasn't preserved, doesn't the hearsay objection, which you're not saying the hearsay objection wasn't preserved, right? No, that absolutely was preserved. Right. They get up and they say, this is hearsay. It's off the stand testimony. That's wrong. Isn't that all by itself? I mean, if your implication is that who knew we would have put Heckman on the stand. I mean, there's a hearsay objection being argued right there. Of course they know they can deal with that, at least in some measure, by getting him on the stand, right? Yes, that's true. I'm not sure that that's what was said. To support your argument on the context here, they were arguing about, they argued about the motive part of 801-D, whether or not this was done pre-conspiracy.  If you look carefully at the objection. Okay. Yes. So you're arguing here that you're looking at the context. Heckman's there and there's no objection, right? I'm looking at that context for just preservation issues, for the confrontation clause. But I agree that it doesn't impact the hearsay analysis, his presence. Well, not if you're going to concede it. It doesn't impact it. But why don't you go on to how you're arguing that this is an error of some sort. We're not arguing that this is not error. That this is either not harmless or it's not playing. Of course. Not harmful or playing. We also take the position that under any standard, we win. The reason is that this is a document. I apologize. I'm sorry, I may have cut you off. I don't want you to leave this confrontation clause point yet if I can keep you there for a minute. Because I want you to respond to what the defense keeps pointing back to. They keep pointing back to pages 667 to 69 of the appendix. The trial counsel, Mr. DeRiso, says, I believe the prior consistent statement needs to be done prior to exposing the conspiracy.  This was done, et cetera. To suggest this is a prior consistent statement prior to him getting on the stand. It's tainted. It's trustworthy. So that's lines 12 through 18, all about the timing. Then you get to line 19, and he says, Additionally, by virtue of me going over his plea agreements and suggesting everything he said was influenced by making a deal, I don't believe that gives the government the right to introduce a report. This report is a narrative offered by Special Agent Heckman, not signed or adopted by the witness, et cetera. Reading in the narrative by the Secret Service agent is tantamount to introducing a police report. Now, my question to you is clearly that's a hearsay objection. But does he have to say the word confrontation, or does the fact that he's saying I've got an agent who's effectively giving testimony through this report and he's not there for me to talk about with, et cetera. Why isn't that, as the defense says, a confrontation clause objection by definition? I think that would be, but that's not what happened here. He didn't make that second part. He didn't say he's not here for me to cross-examine. So you're saying he was at counsel table. I'm saying he was at counsel table. So if he had said that, if he had made that objection, then that could at least have been addressed or perhaps more easily corrected. Another indication that – Yeah, but where does that play in if you've conceded the violations? Well, I'm trying to give context to the preservation issue. The idea that part of the reason that we apply plain error is that – the plain error standard is that these errors are way more easily corrected at the trial stage. And this is an example of an error that could have been much more easily corrected. Precisely. But I'm trying to figure out, again, as a practical matter, what guidance to give to people. Here's an argument about, hey, this is out-of-court statement stuff. You can't let that in, Judge. And if what you're saying is, who knew if he just said the word confrontation, everybody would have said, hey, put him on the stand. Isn't the fact that they're arguing about that telling everybody in the courtroom, including Mr. Heckman, who you say is sitting at counsel table, there's a problem here because he's not on the stand? Well, I think that if you look at the extensive sidebar, that it's – they're really talking about hearsay. But to your point, in giving guidance, I think that you could say, there must be an objection that this person is not available and I can't – I can't examine them. I can't confront them. I don't think that you would have to, especially in this case, on these facts, say you have to say the word confrontation clause or you have to cite a case. Isn't that the very essence of a hearsay objection? That's the point of a hearsay objection. They're not on the stand to cross-examine. That's why it's hearsay. Not necessarily. The hearsay is really about reliability. Well, no, those are – there are exceptions to the hearsay rule which are about reliability. But the problem of hearsay is the problem of no cross-examination, isn't it? Right at its base. Well, I would respectfully disagree. This is the perfect example of why it's not exactly the same. Eric Kelleyan's prior statements could be considered hearsay because they were his prior statements, but he's there to confront. So it is a separate – it really is – But they weren't – they weren't interested in, in fact, None of the argument on those three pages has to do with these are Eric Kelleyan's statements. The argument is all about these are Heckman's – this is Heckman's version of what was said. Heckman's statements. That's the double hearsay problem and it's the point that they got at. These are Heckman's statements and he's not – the report goes in implicit, but what's got to be implicit in that hearsay objection is I can't cross-examine him, he's not on the stand. Isn't that absolutely implicit in the hearsay objection? I don't think so. I think that if you made that holding, then every – almost any hearsay objection could also be a confrontation clause objection. I think that also – I don't read the record as it being all about this isn't Heckman's statement. A lot of the sidebar on this issue had to do with whether this was a prior consistent statement of Mr. Eric Kelleyan that was admissible under 801-3 – I'm sorry, 801. So I think that you know – They talk about timing, but that timing issue – right. They do talk about timing. I grant you that. One other question on this part. Are you acknowledging that there was a confrontation clause error? Yes. That wasn't preserved? Yes. Okay. Yes, Your Honor. And just to briefly address your – And basically that is by the fact that Heckman didn't testify himself? Yes. Okay. Can I ask you one further thing? The hearsay part, are you conceding that was an error as well? Yes. Okay. Got you. So just briefly addressing Judge Fischer's earlier question about why this error is both harmless and Mr. Moreno cannot show prejudice here is that this case is really about documents. If you really look at Mr. Eric Kelleyan's testimony, he is – there are certain statements that he – where he talks about his prior interactions with Moreno, but he really is a vehicle for getting these documents. And the prosecutor is showing him, look at this appraisal. Does this apply to this property? Look at this check to Mr. Moreno and Mr. Moreno's name from the settlement funds. So – and these documents were all admitted at trial. So this – even on the documents alone, you can find harmless error. But what's more than that is there were two categories of corroborating witnesses who said basically the same things that Mr. Eric Kelleyan said. The one part of his testimony that opposing counsel brought out in his argument that he said, well, I'm going to throw you under the bus, that's also – we also had similar testimony from Mr. Reck. He told – he told Mr. Reck, I'm going to deny this until the day I die. So how do you respond to your adversary's point about Mr. Eric Kelleyan? There's no witness like him. He's at the top of the hill. He's the guy who can tie it all together, and he did. How do you respond to that? Well, first of all, I would say that to the extent that he was important in setting out the way that the fraud worked, that he was really sort of an amnesis for the documents. And those documents are admitted already. Second, even though there's not – of course there's not a witness exactly like him, but the witnesses that were involved in the conspiracy that could testify about Mr. Moreno's participation were very strong. We had Mr. Hall, who talked to Mr. Moreno personally several – twice – about twice a week, I think he said. Karen Atkinson, who was so sure that Mr. Moreno knew about this fraud, that when she wanted him to falsely appraise her own home, she went ahead and just sent him the comps to do it. Thaddeus Samuels is the witness who overheard Mr. Arkelyan and Mr. Moreno. Sure. And Mr. Schweitzer's response to all of this, I think in essence, when he was standing up there, was, yeah, but that doesn't get to the point of whether Mr. Arkelyan's hearsay statements given to us through Agent Heckman's hearsay statements didn't affect the verdict. You've got to be able to say with a high probability on the hearsay side and with beyond a reasonable doubt on the constitutional side that it didn't affect the verdict, and that's not something you can say given the potency of what was read into the record. Do you want to respond to that directly? Sure. I think that even assuming that the beyond a reasonable doubt standard applies in Van Arsdale, we both cite that case as setting forth factors to consider. And that case said that in considering harmless error beyond a reasonable doubt, the court can consider the overall strength of the government's case. So that really is something that the court can do. The court can consider that the evidence was corroborated by other witnesses, that it was uncontradicted by the facts. So I would disagree that you can't look at the overall strength of the government's case, which the district court who sat through trial described as overwhelming at sentencing. I would disagree to that extent. Can we give her a little extra time to talk about the issue? Did you give her an additional five minutes? Please give counsel an additional five minutes. Yes, because I would like to hear from you about the extraordinary cross-examination at allocution. First, can you explain? Please tell me this isn't going to be a new pattern or practice in the U.S. Attorney's Office. Absolutely not, Your Honor. This is not our office's practice. It's not something that we want or need to do at sentencing. And that's why we didn't argue that it's not error. Our arguments from our perspective, this issue in this case is a very narrow one, that there's no clear error because there's no law governing whether you can cross-examine a defendant in trial. When we got this case... It might not be the office's practice, but is it counsel's practice? No, Your Honor. Since you're asking, I spoke to trial counsel, obviously, and in his mind, this was really... He was concerned that this was partially testimony of a variance, and that variance request was for a variance based on the idea that the defendant was at a low risk to recidivate because of the post-offense rehabilitation. And that evidence partially overlapped with the classic functions of allocution. We're not arguing that this was not a classic allocution. We're not arguing that. But just to sort of explain what happened here... Every prosecutor would love to, I'm sure... I mean, if what you're saying is, don't worry about it, this was just a prosecutor who wanted to make sure that the government side of things got in front of the court, that will always be a driver, right? That the point of allocution, I guess, I think, based on our law, like Adams and like Palladino, is to give the person who's about to go to the slammer, perhaps, a chance to say something without the government standing up and saying, and this is a bad person, hit him again. Well, the government can always stand up and say that. The government can always... It's not like cross-examining, right? Yeah. Well, I would disagree that Adams and Palladino's Rule 32 stands for the proposition that the government can't cross-examine. But I agree that what is important is that the defendant can get up... So what do we do with this case? I mean, what do we do with this record here? Right. I raise the question, if we conclude that Mr. Schweitzer's position is correct and that Mr. Moreno is entitled to a new trial, I mean, there were some damaging statements made here in this allocution. Well, that would... I mean, how do we not deal with this question? Well, first of all, I think that's a question that comes up, as you pointed out, also in the ward context. We already have that issue of, you know, if a defendant is sworn in or even if he's not sworn in, those statements can be used against him in a subsequent prosecution or proceeding. And I think that, you know, that's just a risk that a defendant takes. A defendant always... Yeah, but the defendant... In fact, this goes to the very point. The defendant doesn't believe, probably, maybe would after this, that by getting up and making my pitch for mercy on my statement of mitigation, I'm going to be subject to 15 minutes of cross-examination under oath. Right? That's not the risk they bargain for when they stand up as they're invited to under Rule 32. It may not be on a subjective level. Well, objectively, since the rule doesn't say, and you will be subject to cross-examination, and since historically centuries of Anglo-American law don't include cross-examination, don't you think it's objectively, not just subjectively, a risk that people don't expect to take? Well, I think that it may not be an objective risk that people expect to take, but that doesn't mean that they have a right to allocute without being cross-examined. Again, we're not defending that on the legal. We're not saying that they don't have that right. The question is, what do we do with this? What do we do with this? You want us to say that it's not plein air. Obviously, it wasn't preserved. In fact, if somebody had objected, if Mr. DiRiso had objected, Judge Fisher may have said, Mr. Conway, no questions here. So it wasn't preserved. Right. All right, but the question is, there are cases out there. If you look at Black's Law Dictionary, which is the genesis of the word allocution, this isn't what was intended, and there are some cases out there. Do we say that this was plein air? I think that you cannot. Even though there are some state court cases out there, that's not enough to show that the issue is not subject to reasonable dispute, which is the pucket standard or clear or obvious. I cited Harris in my brief where six other circuits had found that a specific issue was air, and this court found that that wasn't enough to show that it was plein. But more to your broader point of what can you do here, I think that some of the concern here that I'm hearing is with this particular cross-examination. Go ahead. I think that you can make a distinction between the question of whether cross-examination is ever allowed on allocution, on the one hand, and whether a district court should use its discretion to possibly limit the scope of cross-examination. If you do make that distinction, the Adams presumption of prejudice wouldn't apply.  The only legal basis for the defendant's attack on cross-examination in general on allocution and this cross-examination is that it completely deprives the defendant of the right to allocute. So I think you cannot find plein air in this case. Now, defendants ask us, even if it's not air, we should use our supervisory power to say that this is not proper. Should we go there? I think that those cases describing the court's general supervisory power really deal with administrative and purely procedural issues, not creating a substantive right, which is what this would be. Would it be creating a substantive right or would it be preserving a substantive right? That is, the right to speak for oneself in mitigation without being put under oath and cross-examined by the government. Either way, it would really be sort of a substantive statement on a right, one that would be better suited for Congress to do with an amendment to Rule 32 if necessary than an exercise of supervisory powers, which really haven't been used in that. Let me ask you, can you point to any case that has approved something like this? No, Your Honor. I can only point to cases where the courts themselves, as you've pointed out, have cross-examined defendants where No case where a prosecutor has ever done something like this and the court said, yeah, no big deal. This is a novel issue. I can't point to any cases. I'm sorry, one last question if I might. If allocution has been around for centuries and nobody has tried this before, or at least nobody has tried it in a way that would lead the courts to say, yeah, it's okay, or don't do that, does that cut for you or against you? When you say it can't be plain error because there isn't anything out there, is it maybe that there's nothing out there because it's so plain nobody has ever tried it before? Well, I don't think that that is the case. I think that when you talk about centuries of allocution, obviously the nature of allocution has changed. The nature of sentencing has changed. It's become fact-driven. It's become driven based on assessing variances. Sentencing has changed, but has allocution changed? The allocution that we have today is really rule-based allocution. And I don't think that we can look at the fact that there is no law on this and say that that means that it's plain error. I think that I can imagine situations where there wouldn't be law on an issue, but it's disposed of under maybe a due process analysis or something like that where there is law. But this simply isn't that case. But our cases don't foreclose the possibility of being plain error even if there's no case law, right? That's right. And, in fact, I think Ward provides that path for analyzing allocution, that in considering whether this is subject to reasonable dispute, if you consider those three factors in Ward, it shows that this is not easily disposed of by the very framework that this Court used just three years ago in analyzing allocution. Okay, thank you, Ms. Datila. Thank you, Your Honors. Mr. Schweitzer. Thank you, Your Honors. Judge Fischer, to your point of what to do at a retrial if one were to occur, I do not believe this would be permitted to be introduced at a retrial. I think it's the result of, essentially, prosecutorial misconduct in terms of what was done here. We'd have to say it was. Well, if we didn't say it was, it could be used against you. Well, I think there's an argument that it's compelled self-incrimination. This is beyond. It's critical here when Your Honor was speaking to, well, that's not the bargain. That's not the risk that a defendant takes under the rules, looking at the rules. I think you may have missed my point. My point was if we agree with you on your hearsay question, we may not need to get to this. Oh. And then where are you? Well, that may be, Your Honor, although I would encourage the court to reach this, regardless of whether it goes back so that it doesn't happen again or in another courtroom. However, with respect to I don't think it comes in, and particularly here in this allocation, Mr. Moreno did the right thing. He expressly said in his allocation, I don't want to get into the facts. Okay? The board says that's not what it's about. But more importantly, he made the affirmative decision not to go there, and he was dragged there by the prosecutor. So that's on the allocation point. On confrontation, Your Honor, my colleague says that this was a document case, so affirm. It's harmless. Documents are boring. Documents are not the same as our Killian here, and it's not the same. And REC doesn't provide that information either. Why don't you respond to the point made by Ms. Dottilio that if we were to say that the error here was preserved because when Mr. DiRiso objected on hearsay grounds, he did so in a way that pulled in a confrontation cost analysis, that what we would be doing is turning every hearsay objection into a confrontation cost problem, and that sweeps too broadly. What's your response to that? The response to that, Your Honor, is obviously I disagree with that because you can have a hearsay objection. If this objection had just been, you know, this is pre-motive. That's it. This is pre-motive. That's the objection. That's a hearsay objection. That's not a confrontation objection. One moment. If I can get the appendix. Your Honor, it pointed to page 667 of the appendix and had walked through that. I would also encourage, Your Honor, to look at 669, which Mr. DiRiso says, for instance, it says, are Keeley and claimed. So there are words, a narrative by Heckman that goes to what the statement actually was, which is contained in the notes. So this is all about Heckman. Where's Heckman? Heckman is not on the stand. He goes on. So the notes are, this is starting at lines 14 on 669. So the notes are actual. I would suggest the actual statement, the statement of Heckman, that he was writing it down. So this is all about, this is Heckman. It's not just pre-motive. It's not just a general hearsay objection. So I do think Your Honor is right. For case law support, the court can look to Ramos-Gonzalez, the First Circuit case cited in our brief, where the court, the appellate court there said, look, a personal knowledge objection, that's sufficient in the context. And that's what we really require of contemporaneous objections. We require not precision in the heat of the moment to, you know, at the fall peril of the objecting party. We look at the totality of the circumstance. True, but you need a notice, right? You need a consultation or Sixth Amendment or anything like that. The magic words are not used, but I don't think magic words are required here. I think the gist of the objection was clear, and even if it was not, that we would prevail on the straight-up hearsay preserved issue. Unless the court has any further questions. All right. Thank you. Thank you, Mr. Schweitzer. And we thank both counsel for a job well done on a somewhat complicated and novel case, and we'll take the matter under advisement. Okay? Yeah. Okay. Yeah.